## H. L. GUEYDAN, Petitioner, *v.* COMMISSIONER OF INTERNAL REVENUE, Respondent.

### Docket No. 522.    Decided September 30, 1926.

Debts claimed to be worthless but not charged off the petitioner's books of account are not legal deductions from gross income.

*H. L. Gueydan* pro se.
*Ward Loveless, Esq.*, for the respondent.

This is a proceeding for the redetermination of a deficiency in tax for the year 1919 in the amount of $10,506.93, which deficiency arises from the disallowance of a deduction of $39,579.63 for alleged bad debts.

#### FINDINGS OF FACT.

During the year 1919 the petitioner was a resident of Gueydan, La., and was engaged in the business of advancing money to rice farmers. The money was advanced to enable them to prepare ground for a crop, to purchase seed, and, in some cases, for living expenses. The petitioner also sold plows, disc fertilizers, and thrashing machines to the farmers on vendor's lien notes. During the year 1919 he made advances to farmers, principally share-croppers, in excess of $200,000. In most cases the only security for the advances was a lien upon the crops. Owing to the very wet season the crop was largely a failure. Sixty-five or 70 of the creditors were tenant farmers, and

when they lost their crops they had no property from which the petitioner could collect the amounts owing him. Of the total amount advanced in 1919, petitioner satisfied himself that there was little likelihood of ever recovering $43,659.23. He charged to profit and loss, however, only $4,079.60 advanced. On his income-tax return for 1919 he deducted from gross income the entire $43,659.23. Of this amount the Commissioner disallowed the deduction of $39,579.63, upon the grounds (1) that the amounts were not ascertained to be a loss, and (2) that the amounts were not charged off the petitioner's books of account.

Tenants of the character of those to whom the petitioner loaned money will sometimes lose the crop upon which they have borrowed money but in a succeeding year will have a good crop which will enable them to pay their debts. The petitioner in the conduct of his business has found this often to be the case. Although the petitioner believed that the accounts were worthless at the close of 1919, he did not wish to charge them to profit and loss for the reason that by so doing he would lose sight of them and there was always a possibility that in succeeding years he would be enabled to collect the accounts. It also occasionally happened that a judgment would be taken against such a debtor and might be collected a number of years later, when the debtor would come into possession of property. In succeeding years petitioner advanced money to other tenant farmers, and in some cases to some of the 65 or 70 tenant farmers who had not been able to pay him for advances in 1919. These advances were made in the hope that the debtors would be able to pay back previous advances. The tenant farmers, however, lost their crops for a number of years subsequent to 1919, and the petitioner not only lost the amounts which he had advanced to the 65 or 70 farmers in 1919 but additional amounts in succeeding years.

### OPINION.

SMITH: The Revenue Act of 1918 permits an individual taxpayer to deduct from gross income " debts ascertained to be worthless and charged off within the taxable year." Section 214(a)(7). It will be noted from the foregoing that the statute prescribes two conditions before debts claimed to be worthless may be deducted from gross income in an individual tax return—first, that they must be ascertained to be worthless, and, secondly, that they must be charged off within the taxable year. Although the petitioner may have had reason to believe that he would never collect a large part of his advances to rice farmers during the year 1919, we do not consider that there was such an ascertainment of worthlessness of the ac-

counts as is contemplated by the statute. Furthermore, there was no charging off of the debts by the petitioner.

*Judgment for the Commissioner.*